940 So.2d 1095 (2006)
F.G., et al., Petitioners,
v.
AGENCY FOR PERSONS WITH DISABILITIES, Respondent.
No. SC06-240.
Supreme Court of Florida.
September 28, 2006.
*1096 Charles M. Auslander, The Children's Trust, Miami, FL, on behalf of F.G., James C. Blecke of Deutsch and Blumberg, P.A., Miami, FL, on behalf of the Honorable Cindy S. Lederman and Dennis W. Moore, Mercedes E. Scopetta and Thomas Wade Young, Orlando, FL, on behalf of Guardian ad Litem Program, for Petitioners.
Nancy Schleifer, Coconut Grove, FL, on behalf of Lawyers for Children and Karen Gievers, Tallahassee, FL, on behalf of Florida's Children First, Inc., for Amicus Curiae.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Valerie J. Martin and Charles M. Fahlbusch, Assistant Attorney Generals, Fort Lauderdale, FL, for Respondent.
CANTERO, J.
In this case, we decide whether a juvenile court judge has the authority to subpoena information and testimony from officers of an executive agency regarding a matter within the jurisdiction of that court. We review Agency for Persons with Disabilities v. F.G., 917 So.2d 887 (Fla. 3d DCA 2005), which held that a judge does not have such authority. We have jurisdiction because that decision affects a class of constitutional or state officerscircuit judges. See art. V, § 3(b)(3), Fla. Const. After accepting jurisdiction and hearing oral argument on June 29, 2006, on June 30 this Court issued an order quashing the decision of the Third District Court of Appeal and holding that, under both statute and court rule, a juvenile court judge has the authority to subpoena information and testimony from officers of the Agency for Persons with Disabilities for informational purposes. We now explain our decision.

I. FACTUAL AND PROCEDURAL BACKGROUND
Petitioner F.G. was a minor who applied to the Department of Children and Family Services ("DCF") for services under the Medicaid Waiver Program.[1] His alleged developmental disability was mental retardation. In October 2002, DCF notified F.G. that it had placed him on a waiting list for the waiver. The letter explained that DCF did not have adequate space or funding to meet its existing obligations and to serve him on the waiver as he requested. The letter also stated that if he disagreed with the decision, he could request a fair hearing to contest it. The record in this case is sparse, and it does not indicate that F.G. ever sought administrative or judicial review of DCF's determination.
On June 22, 2005, the circuit court issued a subpoena duces tecum to the Agency for Persons with Disabilities ("APD").[2] The subpoena stated in relevant part:

*1097 TO: Evelyn Alvarez, Orlando Garcia, Joseph Perry,
(or other designated person(s)) Agency for Persons with Disabilities
. . . .
YOU ARE HEREBY COMMANDED to appear before the Honorable Cindy S. Lederman . . . to testify . . . and to have with you . . . the following:
All records and reports concerning the above-mentioned child, in reference to his status with Medwaiver and services rendered or why this child is not receiving services.
The subpoena did not require any specific action by APD, except to appear in court. In response, APD filed an Emergency Petition for a Writ of Prohibition or Certiorari, seeking a writ of prohibition to restrain the circuit court from ordering that its officers appear before it and produce documents.
The Third District granted the writ. F.G., 917 So.2d at 888. It held that "[t]he trial court lacks constitutional or statutory authority to subpoena duces tecum . . . officers of state government, concerning a matter that is within their executive authority." Id. It prohibited the circuit court "from requiring the appearance of [the APD officers] to testify and/or produce" any records. Id.
F.G. sought review in our Court. We exercised our discretion and granted review. On June 29, 2006, we held oral argument and on June 30 we issued an order quashing the district court's decision.
We note that the record does not reflect why or how this case first came before the circuit court. At oral argument, the parties could not clarify the mystery. The most reliable clue is an order from the circuit court appointing counsel. The order states, "This cause came to be heard on JULY 28, 2005 upon a detention/dependent petition filed by Department of Children and Families." (Emphasis added.) The order appointed counsel for the child "in the above-styled dependency proceeding. . . . this 28th day of JULY, 2005." (Emphasis added.) The court, however, issued the subpoena on June 22, 2005. Therefore, either some other cause of action preceded the subpoena, or the date of July 28, 2005, in the order merely refers to the date of that order. The second reference to that date implies that the only matter that arose on July 28, 2005, was the appointment of counsel. If so, then the "dependent petition" must have been filed some time in the past, presumably before the court issued the subpoena, and the "dependency proceeding" resulted from the filing of that petition.[3]
In their briefs and in their filings in the district court, the parties and amici curiae make various references that reinforce the characterization of this case as a dependency proceeding. For example, in its brief, APD notes that the court issued the subpoena "in the context of a dependency action." In its petition for a writ of prohibition, it states that the DCF "is the Respondent in the dependency action below." In addition, it refers to APD as "a non-party to the dependency proceeding." In response to APD's petition for a writ of prohibition, F.G. refers to an "ongoing dependency proceeding." Likewise, the Guardian Ad Litem Program asserts that the court had jurisdiction because this case is a "dependency case."
These references, however, are inconclusive. Thus, we examine the issue in this *1098 case without considering its procedural history and whether this case was properly before the circuit court.

II. ANALYSIS
We begin by noting the narrow issue before us, and the correspondingly narrow basis of our decision. Although the parties have raised various issues about the court's authority to order services and to subpoena high-level executive agency officials, the subpoena under review is limited. It neither orders an agency to perform particular services nor requires the presence of specific high-level officials. We therefore decide only whether the subpoena issued in this case was proper. We do not speculate about other potential orders.
The Third District held below that a circuit court has no authority to subpoena executive agency officials for testimony and documents. F.G., 917 So.2d at 888. Only one other court has considered this issue. See State Dep't of Health Rehab. Servs. v. Brooke, 573 So.2d 363 (Fla. 1st DCA 1991). In Brooke, a juvenile court judge ordered the appearance of the Secretary of the Department of Health and Rehabilitative Services to explain why the Department did not have sufficient funding to place certain children in psychiatric or therapeutic residential facilities. Id. at 365. The First District held that "it was an abuse of the trial court's discretion to demand that [the secretary] appear . . . to provide information that is largely within the realm of the secretary's discretionary authority." Id. at 371. The district court noted that the acting district administrator already had explained why the Department did not have funding. See id. at 366, 371. In a letter to the court, he informed the judge that its allocated budget was less than its needs, and the Department was prohibited from spending more than its approved budget. Id. at 366. The court then explained, however, that under different circumstances a trial court would have the authority to subpoena an executive agency officer. It held that "the separation of powers . . . would not preclude a circuit court from calling before it a member of the executive branch for narrowly defined informational purposes." Id. at 371. Based on the plain language of both the relevant rule and a statute on point, we agree with the First District's analysis.
Both the Florida Rules of Juvenile Procedure and Florida Statutes authorize the subpoena issued here. Rule 8.225(a)(2) provides that "[s]ubpoenas for testimony before the court, for production of tangible evidence . . . shall be issued by the clerk of the court, the court on its own motion, or any attorney of record for a party." (Emphasis added.) In addition, section 39.502(11), Florida Statutes (2005), provides that "[u]pon the application of a party or the petitioner, the clerk or deputy clerk shall issue, and the court on its own motion may issue, subpoenas requiring attendance and testimony of witnesses and production of records, documents, and other tangible objects at any hearing." (Emphasis added.) Furthermore, section 393.13(4)(j)(2)(b), Florida Statutes (2005), states that "[t]he [client's central] record shall be produced in response to a subpoena." Section 393.063(4), Florida Statutes (2005), defines "client" as "any person determined eligible by the agency for services under this chapter." These authorities, particularly rule 8.225(a)(2), clearly authorize a circuit court to issue subpoenas. Such subpoenas may include requests for testimony from APD officers as well as APD's records of a developmentally disabled individual such as F.G. We agree with the district court in Brooke that "the separation of powers . . . [does] not preclude a circuit court from calling before *1099 it a member of the executive branch for narrowly defined informational purposes." 573 So.2d at 371. That was the only information requested here.[4]
Finally, APD argues that the court did not have the authority to subpoena high-level officials of APD unless the information requested was necessary, relevant, and unavailable from anyone else. We reject APD's premise for the argument that any high-level officials were required to appear in this case. The subpoena was issued to "Evelyn Alvarez, Orlando Garcia, Joseph Perry, (or other designated person(s))" of APD. Apparently, Ms. Alvarez is a Program Operations Administrator, Mr. Garcia is a Senior Manager, and Mr. Perry is a Human Resources Counselor.[5] We assume, without deciding, that these are high-level officials within APD. The subpoena, however, did not require these specific officials to attend the hearing. The subpoena specifically noted that any designated person could produce the documents and appear before the court. The subpoena apparently sought to question the APD official with the most knowledge about the issue and the documents requested, which were "[a]ll records and reports concerning the above-mentioned child, in reference to his status with Medwaiver and services rendered or why this child is not receiving services." Thus, APD could produce one of the mentioned officials or another official with knowledge, at its discretion. The subpoena does not require the attendance of the officials specifiedor of any specific individual whatsoever. Therefore, we do not address APD's argument.

III. CONCLUSION
For the reasons stated above, we hold that a circuit court judge has the authority to subpoena information and testimony from APD officers regarding a child's status with the Medicare Waiver Program and receipt of services. We approve the reasoning of the First District in Brooke. We quash the Third District's decision in F.G. and remand for further proceedings.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and BELL, JJ., concur.
NOTES
[1] In this program, Medicaid reimburses enrolled providers for the provision of specified home and community-based services to persons at risk of institutionalization. Fla. Admin. Code R. 59G-13.080(1). Florida obtained waivers of federal Medicaid requirements to facilitate this process. Id. Waiver program participants must meet institutional level of care requirements. Id. The services are designed to allow the recipients to remain at home or in a home-like setting. Id.
[2] Before 2004, DCF determined eligibility for developmental disability services. That year, however, the Legislature created APD as an entity separate from DCF. See § 20.197, Fla. Stat. (2004). APD is now responsible for providing services to persons with developmental disabilities under chapter 393. Id. § 20.197(2).
[3] In addition, the case number in both the order appointing counsel and the subpoena is 02-16188, which indicates that this case arose sometime in 2002, the year DCF placed F.G. on a waiting list for developmental disability services.
[4] F.G., Judge Lederman, and amicus curiae assert additional arguments for the court's authority to issue the subpoena here, such as the court's "inherent" responsibility to protect the best interests of children and other statutes that grant such authority. Because sections 39.502(11) and 393.13(4)(j)(2)(b) and rule 8.225(a)(2) resolve the issue, however, we need not address these other grounds.
[5] The information regarding Ms. Alvarez's and Mr. Garcia's positions in APD are in the record. However, the record contains no information regarding Mr. Perry. In its brief, APD states that Mr. Perry is a Human Resources Counselor.